IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
1:21-cv-00336-MR-WCM

| | |
|---|---|
| RICHARDSON RFPD, INC., ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> NEXUS TECHNOLOGIES, INC. ) <br> ) <br> Defendant. ) <br> _____ ) | **MEMORANDUM AND RECOMMENDATION** |

This matter is before the court on Defendant's Motion to Dismiss (Doc. 7), which has been referred to the undersigned pursuant to 28 U.S.C. § 636 for the entry of a recommendation.

I. Relevant Background

A. Procedural History

On November 8, 2021, Richardson RFPD, Inc. ("Plaintiff") filed its Complaint against Nexus Technologies, Inc. ("Defendant"). Doc. 1.[1]

On January 13, 2022, Defendant filed the Motion to Dismiss. Doc. 7. Plaintiff has responded, and Defendant has replied. Docs. 9, 10.

---

[1] Plaintiff's Complaint states that Plaintiff originally filed suit in the Northern District of Illinois in May 2020 and that the court dismissed the case in late September 2021 without prejudice for lack of personal jurisdiction on a motion by Defendant. Doc. 1 at ¶¶ 38-42.

1

### B. Plaintiff's Allegations

In the summer of 2018, Defendant issued a "blanket purchase order (the 'PO')" to Plaintiff for certain electronics components that Defendant intended to incorporate into its own products. Plaintiff alleges that the PO directed Plaintiff to procure the merchandise "on a non-cancelable and non-returnable ('NCNR') basis." Doc. 1 at ¶¶ 1, 11.[2]

Through the Fall of 2018, Defendant "added to the PO by ordering additional merchandise" from Plaintiff. Id. at ¶ 12.

By the end of 2018, Defendant had accepted and paid for nearly $200,000.00 of merchandise under the PO. Plaintiff also alleges that by this time there was "roughly $600,000.00 in merchandise left outstanding for delivery to [Defendant] under the PO." Id. at ¶13.[3]

---

[2] Plaintiff's Complaint states that the "operative version" of the PO is attached to the Complaint as Exhibit 3. Doc. 1 at ¶ 34. The undersigned interprets this Exhibit as being a copy of the PO that includes the subsequent amendments, and not a copy of the PO as it existed when it was originally created in June 2018. The PO, as well as the other materials attached to the Complaint may be considered. See Philips v. Pitt Cty. Mem'l Hosp., 572 F.3d 176, 180 (4th Cir. 2009) (stating that courts may take judicial notice of matters of public record, documents attached to the complaint, and documents attached to the motion to dismiss so long as they are integral to the complaint and authentic).

[3] The undersigned reads these allegations to mean that by the end of 2018, Plaintiff had obtained and shipped approximately $200,000 worth of merchandise, that Defendant had accepted and paid for these goods, and that Defendant had ordered approximately $600,000 worth of additional merchandise but that Plaintiff had not yet procured these additional goods.

The parties agreed that Defendant would pay for this remaining merchandise within 90 days of shipment. Id. at ¶ 14.

The parties also agreed that Plaintiff would supply the remaining merchandise on an NCNR basis in 2019; that is, because Plaintiff could not return the merchandise to its supplier, Defendant would be required to take delivery of and pay for the merchandise and not cancel the order or return the merchandise to Plaintiff. Id. at ¶ 15.

Plaintiff alleges that it accepted Defendant's order consistent with these terms and subsequently "obtained and held in inventory the NCNR merchandise [Defendant] requested under the PO." Id. at ¶¶ 16, 17.

### 1. Delivered and Invoiced Merchandise

In "early 2019," Plaintiff shipped $105,180.00 worth of merchandise to Defendant under the PO. Id. at ¶ 18.

Plaintiff alleges that all shipments it made to Defendant were subject to Plaintiff's terms and conditions (the "Terms and Conditions"). Id. at ¶ 22.[4]

Invoices for these goods were issued on January 29, 2019 and February 1, 2019 (the "Invoices"). Id. at ¶ 19.[5]

---

[4] A copy of the Terms and Conditions is attached to Plaintiff's Complaint as Exhibit 2. Doc. 1-2.

[5] A copy of the Invoices is attached to Plaintiff's Complaint as Exhibit 1. Doc. 1-1.

Pursuant to the Invoices and the Terms and Conditions, payment was due within 90 days. Id. at ¶ 20; ¶¶ 23-26; ¶ 29.

Plaintiff alleges that Defendant has not paid Plaintiff the invoiced amounts. Id. at ¶ 30.

### 2. Undelivered Merchandise

Defendant requested that the delivery of the remaining merchandise be delayed. Plaintiff agreed to delay delivery of the remaining merchandise it was holding until 2020 and to make shipments on January 31, 2020; February 28, 2020; March 31, 2020; and April 30, 2020, with payment being due, as before, within 90 days of the date of the invoice for each shipment. Id. at ¶ 34.

Defendant, however, has refused to accept delivery of or pay for any of the remaining merchandise, and Plaintiff "is currently holding approximately $422,810.00 of unshipped NCNR merchandise that [Defendant] ordered from [Plaintiff] but for which [Defendant] has refused to arrange shipment and payment." Id. at ¶¶ 35, 37.[6]

### C. Plaintiff's Claims

The Complaint asserts two claims for breach of contract – one concerning the merchandise that Plaintiff delivered and invoiced (the "Invoice Claim") and

---

[6] Plaintiff also alleges that it has mitigated roughly $50,000.00 of its damages but has been unable to mitigate its remaining damages. Doc. 1 at ¶ 36.

4

another with respect to the goods Plaintiff is holding (the "Inventory Claim"). Doc. 1 at ¶¶ 43-54; 55-65.

In the alternative, the Complaint asserts a single equitable claim under a theory of promissory estoppel. Id. at ¶¶ 66-71.

II. Legal Standard

When considering a motion made pursuant to Rule 12(b)(6), the court, accepting the allegations in the complaint as true and construing them in the light most favorable to the plaintiff, determines "whether the complaint on its face states plausible claims upon which relief can be granted." Francis v. Giacomelli, 588 F.3d 186, 189, 192 (4th Cir. 2009); accord Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 253 (4th Cir. 2009).

The court, however, is not required to accept "legal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement." Consumeraffairs.com, 591 F.3d at 255; see Giacomelli, 588 F.3d at 192. That is, while "detailed factual allegations" are not required, the complaint must contain "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007); accord Consumeraffairs.com, 591 F.3d at 255. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); accord Consumeraffairs.com, 591 F.3d at 255.

5

In short, the well-pled factual allegations must move a plaintiff's claim from conceivable to plausible. Twombly, 550 U.S. at 570; Consumeraffairs.com, 591 F.3d at 256.

## III. Discussion

By the Motion to Dismiss, Defendant seeks the dismissal of all of Plaintiff's claims.

Because this court is exercising diversity subject matter jurisdiction,[7] the substantive law, including the choice of law principles, of the forum state in which the action arose – here North Carolina – applies. Castillo v. Emergency Med. Assocs. PA, 372 F.3d 643, 646 (4th Cir. 2004) (citing Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78 (1938)); Klaxon Co. v. Stentor Electric Mfg. Co., 313 U.S. 487 (1941); Volvo Construction Equip. North Am., Inc. v. CLM Equip. Co., 386 F.3d 581, 600 (4th Cir. 2004).

### A. Breach of Contract

#### 1. Choice of Law

Under North Carolina law, generally parties to a contract may agree that their agreement will be governed by the law of a particular jurisdiction. Volvo Const. Equip. N. Am., Inc. v. CLM Equip. Co., Inc., 386 F.3d 581, 602 (4th Cir.

---

[7] Plaintiff alleges that it is a Delaware corporation with its principal place of business in Illinois, and that Defendant is a North Carolina corporation with its principal place of business in North Carolina. Doc. 1 at ¶¶ 6-7.

2004) ("…contracting parties in North Carolina are entitled to agree that a particular jurisdiction's substantive law will govern their contract, and such a provision will generally be given effect").

Here, Plaintiff alleges that because the shipments referenced by the Invoices were expressly made subject to the Terms and Conditions, which included a New York choice of law provision, New York law governs this matter. Doc. 1 at ¶¶ 22 & 28; see also Doc. 1 at ¶ 45; see also Doc. 1-2 at 2, ¶ 4 (Terms and Conditions) ("[a]ll transactions are governed by the laws of the State of New York").

Defendant disputes that it accepted the Terms and Conditions and "does not concede that New York law governs." However, Defendant also acknowledges that there is no conflict between New York and North Carolina law with respect to Plaintiff's breach of contract claims, and therefore Defendant has cited New York law in its briefing relative to those claims. See Doc. 8 at 3, n. 1 ("the laws of New York and North Carolina do not differ meaningfully on the elements of a breach of contract claim, and Nexus cites to New York law as to Counts I and II for purposes of this Motion only"). Plaintiff likewise cites to New York law in its briefing.

### 2. Failure to State a Claim

To state a claim for breach of contract under New York law, "the plaintiff must allege "(i) the formation of a contract between the parties; (ii)

7

performance by the plaintiff; (iii) failure of defendant to perform; and (iv) damages." JTRE Manhattan Avenue, LLC v. Capital One, N.A., No. 21-CV-5714 (VEC), ---F.Supp.3d---, 2022 WL 392914, at *5 (S.D.N.Y. Feb. 9, 2022) (quoting Orlander v. Staples, Inc., 802 F.3d 289, 294 (2d Cir. 2015)).

Defendant argues in its opening brief that, both as to the Invoice Claim and the Inventory Claim, Plaintiff cannot plead that the time for Defendant's performance under the PO has expired because, while the PO included requested delivery dates, it also stated that the parties "must review PO delivery every 15 business days and adjust schedule accordingly." Thus, Defendant argues that it was not required to take delivery of the merchandise on any specific date but rather only on a date agreed to by the parties after consultation, and since Plaintiff does not allege that the parties agreed to the delivery of either the shipment that was sent in early 2019 or of the remaining merchandise, Plaintiff cannot demonstrate that a breach has occurred. Doc. 8 at 3-4.

In response, and with respect to the Invoice Claim, Plaintiff argues that "the contractual obligations at issue in Count I are *separate from* the allegations in the amended version of the PO…." Doc. 9 at 6 (emphasis in the original). That is, Plaintiff contends that the Invoice Claim is "entirely independent of that subsequently amended version of the PO." Id. at 7. Plaintiff goes on to argue that the Invoice Claim is adequately pled because the

parties agreed to product deliveries in 2019, Plaintiff made those deliveries, and Defendant accepted them subject to the Terms and Conditions. Id. at 7.

With respect to the Inventory Claim, Plaintiff contends that it has adequately pled a claim for violation of the PO and that "the parties agreed to specific delivery dates for the remaining unshipped components." Doc. 9 at 4 (citing Doc. 1 at ¶ 34 (Plaintiff's allegation that it agreed to delay delivery with four shipments in January through March of 2020)).

"On a motion to dismiss, the Court may dismiss a breach of contract claim for failure to state a claim if the terms of the contract are unambiguous and the 'plain language' of the contract contradicts or fails to support the plaintiff's allegations of breach." JTRE Manhattan Avenue, LLC v. Capital One, N.A., 2022 WL 392914, at *5 (quoting Orchard Hill Master Fund Ltd. v. SBA Commc'ns Corp., 830 F.3d 152, 156–58 (2d Cir. 2016)); Paterno v. Wells Fargo Ins. Services, Inc., No. No. 2:12-cv-04692, 2013 WL 1187932, at *4 (S.D. W. Va. March 21, 2013) ("Where the plain language of a contract contradicts the allegations of the plaintiff's complaint, dismissal of the claims is proper").

Here, with respect to the Invoice Claim, the specific terms of the PO that were in effect at the time Plaintiff shipped the merchandise to Defendant in early 2019 are unclear. Plaintiff contends that it has attached the "operative version" of the PO to its Complaint, though that document indicates that it was printed in October 2019 and reflects what appear to be the requested shipment

9

dates in 2020. Plaintiff also states that the PO was repeatedly revised by the parties, though has not indicated specifically what revisions were made and when.

Nonetheless, Plaintiff has alleged that the merchandise delivered to Defendant in early 2019 was shipped "consistent with the terms of the PO," that the parties had agreed Defendant would pay Plaintiff within 90 days of shipment, that Defendant accepted the merchandise, and that Defendant has not paid Plaintiff any of the invoiced amounts. Further, Plaintiff has alleged that the Terms and Conditions applied to the 2019 shipment.

As for the Inventory Claim, while the PO included language concerning the parties' obligations regarding delivery dates – that they "must review PO delivery every 15 business days and adjust schedule accordingly" – Plaintiff has alleged that Defendant requested a delay in the delivery of the remaining merchandise and that, in response, Plaintiff agreed to delay delivery and to make shipments on four specific dates in early 2020 with payment being due 90 days after the date of the invoice for each shipment.

Though Plaintiff's descriptions of the specific terms of each contract could be more precise, the undersigned is not persuaded that, on the current record, Plaintiff's allegations regarding Defendant's alleged breaches are so contradicted by the terms of the alleged contracts that Plaintiff's claims should be dismissed. Consequently, the undersigned will recommend denial of

10

Defendant's Motion to Dismiss as it pertains to Plaintiff's breach of contract claims. See Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y., 375 F.3d 168, 178 (2d Cir. 2004) ("Unless for some reason an ambiguity must be construed against the plaintiff, a claim predicated on a materially ambiguous contract term is not dismissible on the pleadings"); see also DFA Dairy Brands, LLC v. Primus Builders, Inc., No. 5:21-CV-00026-KDB-DSC, 2021 WL 5826785, at *3 (W.D.N.C. Dec. 8, 2021) ("While the interpretation of a written contract may be a question of law that can be resolved in a motion to dismiss where there are no underlying factual issues, if there is any factual dispute regarding how to properly interpret the contract, it is not appropriate for consideration under a 12(b)(6) challenge") (internal citations omitted).

### B. Promissory Estoppel

Defendant next argues that Plaintiff's promissory estoppel claim should be dismissed because North Carolina law applies and does not recognize such a cause of action. See Doc. 8 at 6.

In response, Plaintiff contends that this claim should not be dismissed because it is governed by New York law, since the "[Terms and Conditions] contain a New York choice of law provision that [Defendant] had previously agreed would govern its commercial relationship" with Plaintiff. Doc. 9 at 12. Alternatively, Plaintiff argues that this claim should be analyzed under Illinois law. Id. at 13. Plaintiff contends that both New York and Illinois recognize a

cause of action for promissory estoppel and Defendant appears to agree. See Doc. 8 at 6.

However, the current factual allegations are not sufficiently complete to allow a determination to be made concerning the state law that should govern this claim. First, it is not clear that the Terms and Conditions, and therefore New York law, apply to all of the parties' dealings. The Terms and Conditions state that all "transactions" will be governed by the laws of the State of New York, Doc. 1-2 at 2, but Plaintiff has alleged that "the *shipments covered by the Invoices* were expressly made subject to" the Terms and Conditions, see Doc. 1 at ¶ 22 (emphasis added) and has not alleged that the Terms and Conditions applied to the parties' dealings with respect to the merchandise held in inventory by Plaintiff.[8]

Additionally, the parties appear to agree that, in the event New York law does not control, the principle of *lex loci contractus* should be used to determine the substantive law that should be applied to this claim. See Doc. 8 at 6; Doc. 9 at 14; In re Nantahala Village, Inc., 976 F.2d 876, 881 n.7 (4th Cir. 1992) (internal citations omitted) (The rule of *lex loci contractus* "focuses on the state

---

[8] This Memorandum references New York law with respect to the Inventory claim because the parties cited New York law in their briefing and there appears to be no conflict between such law and North Carolina law. However, as described below, New York and North Carolina law differ with respect to a claim for promissory estoppel.

where the contract was entered into or the state where the contract was to be performed"). However, assuming a *lex loci contractus* analysis would be appropriate,[9] the Complaint does not contain sufficient detail to conduct such an analysis.

Further, even if the law of New York or Illinois, as opposed to North Carolina law[10], were to apply, while those jurisdictions recognize a promissory estoppel claim, it appears that they do so when there is not a valid contract and related contractual claim. See Brenner v. Brenner, No. CV 10-4857, 2012 WL 3597247, at *7 (E.D.N.Y. Aug. 20, 2012) (explaining that a promissory estoppel claim may proceed with a breach of contract claim where it is not clear that a valid contract exists); Czerska v. United Airlines, Inc., 292 F.Supp.2d 1102, 1120 (N.D. Ill. 2003) ("Although a party may plead breach of contract and promissory estoppel in the alternative, once the court finds an enforceable contract between the parties and the existence of consideration, the party may not recover under the promissory estoppel theory"). Since Plaintiff's claim for promissory estoppel is made in the alternative to Plaintiff's breach of contract claims, an analysis of the merits of this claim is not necessary at this time as

---

[9] The parties have not cited authorities indicating that, under North Carolina choice of law rules, a *lex loci contractus* analysis should be used to determine the substantive law that would apply to a claim for promissory estoppel.

[10] "North Carolina ... does not recognize promissory estoppel as an affirmative cause of action." Rudolph v. Buncombe Cty. Gov't, 846 F. Supp. 2d 461, 477 (W.D.N.C.), *aff'd*, 474 F. App'x 931 (4th Cir. 2012).

13

Plaintiff's contract claims are sufficiently stated to survive the Motion to Dismiss.

Accordingly, the undersigned will recommend that the Motion to Dismiss be denied as to Plaintiff's equitable claim under a theory of promissory estoppel.

IV. **Recommendation**

For the reasons set forth herein, the undersigned respectfully **RECOMMENDS** that Defendant's Motion to Dismiss (Doc. 7) be **DENIED**.

Signed: May 4, 2022

W. Carleton Metcalf
United States Magistrate Judge

## Time for Objections

The parties are hereby advised that, pursuant to Title 28, United States Code, Section 636, and Federal Rule of Civil Procedure 72(b)(2), written objections to the findings of fact, conclusions of law, and recommendation contained herein must be filed within **fourteen (14)** days of service of same. **Responses to the objections must be filed within fourteen (14) days of service of the objections.** Failure to file objections to this Memorandum and Recommendation with the presiding District Judge will preclude the parties from raising such objections on appeal. See Thomas v. Arn, 474 U.S. 140, 140 (1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir. 1984).